UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ALYSSA V.,

               Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

---

22-CV-809-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 11)

Plaintiff Alyssa V.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Insurance ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 7) is denied, and defendant's motion (Dkt. No. 8) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for SSI on April 30, 2018, with an alleged onset date of August 1, 2017. (Administrative Transcript ["Tr."] 15, 307-12).  The application was initially denied on August 29, 2018. (Tr. 15, 136-41).  Plaintiff filed a written request for hearing on September 24, 2018. (Tr. 142-44).

An administrative hearing was conducted by Administrative Law Judge ("ALJ") Paul V. McGinn via telephone on June 1, 2021, at which Plaintiff participated, along with her counsel.  (Tr. 37-75).  A medical expert and a vocational expert also testified.

On August 3, 2021, the ALJ issued an unfavorable decision.  (Tr. 12-36).  The Appeals Council denied review.  (Tr. 1-6).  This case followed.

## DISCUSSION

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision

---
[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review.  The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).  The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588.  While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct.  The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence.  Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

§§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is

not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III.    *The ALJ's Decision*

At step one of the sequential analysis, the ALJ found the Plaintiff had not engaged in substantial gainful activity since April 30, 2018, the application date. (Tr. 17). At step two, the ALJ determined that Plaintiff had the following severe impairments: seizure disorder; neurocognitive disorder secondary to seizure disorder; hypoxic brain injury; learning disorder; asthma; headaches; and attention-deficit hyperactivity disorder. (Tr. 18). At step three, the ALJ found that none of Plaintiff's impairments or combination of impairments met or equaled the criteria for any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings). (Tr. 18-21). Before proceeding to step four of the sequential evaluation process, the ALJ determined that, despite Plaintiff's impairments, she could perform light work, except that she: must avoid concentrated exposure to fumes, odors, dusts, gases, poorly ventilated areas, and other pulmonary irritants; could have no exposure to unprotected heights, dangerous moving mechanical parts, loud noises, and vibration; could only understand, remember, and carry out simple and routine tasks and instructions; could have no strict production quotas, no supervisory duties, and no independent decision making; could only have only minimal changes in work routine;

and could only perform jobs with a GED level education with level 1-2 math skills. (Tr. 21-29). Next, at steps four and five, the ALJ determined that Plaintiff did not have any past relevant work, but could perform work that existed in significant numbers in the national economy. (Tr. 29-30). Accordingly, the ALJ found that Plaintiff was not disabled under the Act. (Tr. 30).

    IV.    *Plaintiff's Challenge*

Plaintiff argues that the case must be remanded, because the ALJ: (1) at step three, failed to evaluate properly Listing 12.02 (Neurocognitive disorders); (2) made multiple errors evaluating the supportability and consistency of the medical opinions of record; and (3) failed to evaluate properly Plaintiff's well-supported subjective complaints of memory issues. The Court disagrees.

The Court finds that there is substantial evidence supporting the ALJ's RFC finding. For instance, the ALJ considered that, despite Plaintiff's childhood brain injury and seizures, the treatment records consistently documented no significant motor or focal neurological deficits. (Tr. 23-28; citing Tr. 610, 710, 732, 740, 785). Physical examinations also regularly documented intact or normal motor strength, tone, sensation, reflexes, coordination, gait, heel-toe gait, and tandem gait. (Tr. 22-23, citing Tr. 645, 710, 732; *see also, e.g.*, Tr. 610, 612, 615-16, 622, 770). Similarly, Plaintiff's mental status examinations were generally normal. (Tr. 19-20, 23, 25; *see, e.g.*, Tr. 465, 612, 615, 622, 624, 626, 629, 635, 639, 644, 648, 650, 652, 657, 682, 770, 777, 785, 788, 791, 834, 840).

The ALJ also considered Plaintiff's lack of mental health treatment as undermining her allegations that anxiety and other mental impairments rendered her too disabled to perform any work. (Tr. 20, 22, 25); *see Navan v. Astrue*, 303 F. App'x 18, 20 (2d Cir.

2008) (citing *Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989) (noting that Plaintiff's allegations of disability were undermined by her failure to seek regular treatment for her allegedly disabling mental impairments)); *Salvaggio v. Apfel*, 23 F. App'x 49, 51 (2d Cir. 2001) ("the result of the plaintiff's choice to seek only minimal medical attention of her symptoms…supports the finding that the plaintiff was not under a disability.").

Further, as explained below, Plaintiff's arguments on appeal are unavailing.

At step three of the sequential evaluation, Plaintiff bears the burden to show that her impairments meet or equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the Listings). *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (explaining the allocations of burdens of proof under the sequential evaluation); *Poupore v. Comm'r*, 566 F.3d 303, 306 (2d Cir. 2009) (claimant bears the general burden of proving disability within the meaning of the Social Security Act and the burden of proof at the first four steps of the sequential process). The Commissioner's regulations explicitly state that, to meet a Listing, Plaintiff must show that her condition meets *all* of the criteria of that particular Listing. *See* 20 C.F.R. § 416.925(c)(3); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." (emphasis in original)).

Here, the ALJ considered multiple possible Listings—such as 3.03 (asthma), 11.02 (epilepsy), 12.02 (neurocognitive disorders), and 12.11 (neurodevelopmental disorders)—and reasonably determined that Plaintiff did not meet or equal the criteria of any Listing. (Tr. 18-21). Most relevant here, the ALJ carefully considered whether Plaintiff satisfied the criteria of Listing 12.02 and determined that she did not. *See id.* Listing 12.02

contains three parts, or "paragraphs," and to satisfy its requirements, a claimant must show that she meets paragraphs A and B, or paragraphs A and C. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.02. The ALJ found that Plaintiff did not meet either paragraphs B or C and thus her mental impairments could not meet or equal the criteria of Listing 12.04. (Tr. 18-21).

The ALJ first found that Plaintiff's mental impairments did not meet the paragraph B criteria. (Tr. 19-21). As the ALJ explained, Paragraph B of Listing 12.02 requires one extreme limitation or two marked limitations in the four broad areas of functioning and Plaintiff had only moderate limitations in all four areas, which are: 1) understanding, remembering or applying information; 2) interacting with others; 3) concentrating, persisting or maintaining pace; and 4) adapting or managing oneself. *Id.* The ALJ's determination that Plaintiff did not meet the Paragraph B criteria is supported by substantial evidence. *See id.*

Next, the ALJ found that Plaintiff did not meet the Paragraph C criteria. (Tr. 21). Paragraph C first requires a "serious and persistent" mental disorder with evidence of both "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder." *See id.* Plaintiff acknowledges that she did not receive or require ongoing medical treatment or mental health therapy to diminish the symptoms of her allegedly disabling impairments. Nor does Plaintiff suggest that living in an apartment with her mother, in the community, constitutes a "highly structured setting." *See id.* Rather, Plaintiff alleges that she meets the criteria of Paragraph C because she receives "psychosocial" support from her mother (*id.*), but this argument is unavailing.

In support of this argument, Plaintiff points to her testimony that she was with her mother most of the time and particularly when she leaves the house, but Plaintiff mischaracterizes this testimony. Plaintiff actually testified that her mother accompanies her most places because of Plaintiff's anxiety and then, as the ALJ noted, Plaintiff immediately testified that she has never been treated for anxiety, thereby belying her allegations that she could not function independently because of it. (Tr. 44-45); *see Navan*, 303 F. App'x at 20; *Salvaggio*, 23 F. App'x at 51.

Further, Plaintiff's allegation that she needs ongoing psychosocial support from her mother is at least arguably inconsistent with the overall evidence. Plaintiff appeared at the hearing without her mother (Tr. 37) and testified independently, answering all questions clearly and appropriately. (Tr. 41-61). As the ALJ noted, Plaintiff consistently told providers that she lived with her mother but was independent in her activities of daily living and completed errands by walking or having a family member drive. (Tr. 19-21; *see, e.g.*, Tr. 568, 571, 574, 577, 581, 584, 587, 590, 592, 595, 597, 600). Plaintiff told her primary care providers that she did not find it difficult to meet her daily needs, interact with others, or maintain adequate social skills. (Tr. 587). And Plaintiff reported that she used "Medicaid cabs" to get to medical appointments, but there is no indication that her mother accompanied her to these appointments, or that she had any difficulty independently communicating with her providers, further undermining her allegations. (*See generally* Tr. 567-658; *see also, e.g.*, Tr. 568, 571, 580 (treatment notes indicating "no communication barriers" with claimant)). There is nothing in Plaintiff's treatment notes to indicate that she required ongoing psychosocial support from her mother in her daily life. Thus, Plaintiff's allegations are unsupported. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir.

1983) ("The [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say."); *Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012) (a lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits).

The ALJ also found that Plaintiff failed to prove, as is her burden, that she meets the other Paragraph C criteria—a "[m]arginal adjustment, that is . . . minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life." Rather, as the ALJ explained, Plaintiff exhibited no evidence of a minimal capacity to adapt to changes in her environment or demands that are not already a part of her daily life. (Tr. 21). For instance, the ALJ noted that Plaintiff consistently reported that she was independent with her activities of daily living and engaged in a wide variety of hobbies. (Tr. 21; citing, e.g., Tr. 590, 597, 600 (primary care doctor noting that Plaintiff was independent with activities of daily living) and Tr. 455, 494-95, 768 (Plaintiff reporting that her hobbies included texting and spending time with friends, making jewelry, decorating cakes, drawing, exercising, seeing her grandparents, and listening to the radio)).

Plaintiff alleges that she meets these criteria because consultative examining psychologist Dr. Kevin Duffy opined that she had a moderate to marked limitation in learning new tasks, but Dr. Duffy also found that "[t]here do not appear to be any significant deficits in adaptive functioning at this time" and that Plaintiff could perform simple tasks independently. (Tr. 455, 460-61). Further, Dr. Duffy's opinion is consistent with the ALJ's RFC finding and thus does not prove that Plaintiff could not work because

she meets a Listing. Plaintiff's allegation that the opinion of Dr. Robert Glover, her treating neurologist, provided evidence of "marginal adjustment" is without merit. The ALJ found that Dr. Glover's restrictive opinion was unpersuasive as it was unsupported by, and inconsistent with, the overall evidence. (Tr. 28).

Next, Plaintiff's argument that remand is required for the ALJ to consider more explicitly the "conflicting evidence" on whether Plaintiff meets Listing 12.02 is not persuasive. The ALJ explicitly considered Paragraphs B and C of Listing 12.02 and the relevant evidence to find that Plaintiff did not meet their criteria. (*See* Tr. 19-21). The ALJ's analysis here passes muster, even if Plaintiff does not agree with its outcome. *See Coleman v. Comm'r of Soc. Sec.,* No. 18-CV-6894, 2020 WL 5792974, at *4 (W.D.N.Y. Sept. 29, 2020), citing *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-13 (2d Cir. Mar. 25, 2010) ("Although we have cautioned that an ALJ should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment, the absence of an express rationale for an ALJ's conclusions does not prevent us from upholding them so long as we are able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.").

Moreover, under the substantial evidence standard of review, it is not enough for Plaintiff to merely argue that the evidence in the record could support her position. *See Biestek*, 139 S. Ct. at 1154. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *See Brault*, 683 F.3d at 448; *see also Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (reviewing court must afford the Commissioner's determination considerable deference and cannot substitute its own judgment even if it might justifiably have reached a different result upon a de novo

review). Here, substantial evidence, such as treatment notes and Plaintiff's consistent reports that she was independent with activities of daily living, provide substantial evidence to support the ALJ's finding that Plaintiff did not meet the criteria of Listing 12.02. (*See* Tr. 19-21). Plaintiff has not proven that no reasonable factfinder could have reached the ALJ's conclusion.

Next, contrary to Plaintiff's arguments otherwise, the ALJ adequately considered opinions from consultative examining psychologist Dr. Duffy, Plaintiff's own providers Family Nurse Practitioner (FNP) Danielle Minazzi and neurologist Dr. Robert Glover, and consultive examining neurologist Dr. Nikita Dave. (*See* Tr. 17-29).

The ALJ found Dr. Duffy's opinion "generally persuasive." (Tr. 26-27). As the ALJ noted, after examining Plaintiff, Dr. Duffy opined that Plaintiff could: follow and understand simple directions and instructions; perform simple tasks independently; make appropriate decisions; relate adequately with others; and deal appropriately with stress. (Tr. 26-27, citing Tr. 460-61). Dr. Duffy also found, as the ALJ noted, that Plaintiff may have mild-to-moderate difficulties maintaining a regular schedule and moderate-to-marked difficulties learning new tasks. (Tr. 26-27, citing Tr. 460-61). Plaintiff does not take issue with the ALJ finding Dr. Duffy's opinion "generally persuasive," but argues that the ALJ erred by not mirroring Dr. Duffy's findings regarding her abilities to maintain a regular schedule and learn new tasks in his RFC finding. This argument is unpersuasive.

As an initial matter, even where an ALJ finds an opinion fully persuasive, he or she need not incorporate every aspect of the opinion into his or her RFC finding. *See Schillo v. Kijakazi* 31 F.4th 64, 78 (2d Cir. Apr. 6, 2022) ("[A]n ALJ's conclusion need not 'perfectly correspond with any of the opinions of medical sources cited in his decision,' because the

ALJ is 'entitled to weigh all of the evidence available to make a residual functional capacity finding that [is] consistent with the record as a whole.'") (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)); *see also Warren v. Comm'r of Soc. Sec.*, No. 3:15-CV-1185-GTS-WBC, 2016 WL 7223338, at *7 (N.D.N.Y. Nov. 18, 2016), *report and recommendation adopted sub nom. Warren v. Colvin,* No. 3:15-CV-1185-GTS-WBC, 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016) ("An ALJ does not have to strictly adhere to the entirety of one medical source's opinion.").

Moreover, Plaintiff's allegation that a moderate limitation in maintaining a schedule is inconsistent with an RFC for simple work is incorrect. *See Bennett v. Saul*, No. 19-CV-6522-DGL, 2020 WL 1915303, at *3 (W.D.N.Y. Apr. 20, 2020) (RFC for a range of unskilled work was supported by opinion finding, among other things, moderate-to-marked limitations in maintaining a schedule).

Similarly, courts in this Circuit have rejected Plaintiff's argument that a moderate-to-marked, or greater, limitation in learning new tasks is inconsistent with an RFC for a range of simple work. *See Collins v. Comm'r of Soc. Sec.*, No. 19-CV-00298, 2020 WL 5742677, at *4 (W.D.N.Y. Sept. 24, 2020), quoting *Saxon v. Colvin*, No. 13-CV-165, 2015 WL 3937206, at *6 (W.D.N.Y. June 26, 2015) ("The ALJ considered the functional limitations suggested by the medical evidence, including plaintiff's moderate limitation in the ability to learn new tasks. . . . These limitations are incorporated into the RFC, which limits plaintiff to simple routine tasks. . ."); *Warren*, 2016 WL 7238947 at *7 (finding no error when an ALJ granted great weight to a consultative examiner's opinion of moderate-to-marked limitations learning new tasks and assessed an RFC for a range of unskilled work). Moreover, here, the ALJ did not only restrict Plaintiff to simple work—he restricted

her to work that involved only "minimal changes in work routine" and "simple and routine tasks and instructions," further accommodating any limitation in learning new tasks. (*See* Tr. 21).

Plaintiff also alleges that the ALJ erred by finding the opinions from treaters FNP Minazzi and Dr. Glover generally persuasive but also noting that they were "vague." This argument is unavailing.

NP Minazzi and Dr. Glover each opined that Plaintiff had "no evidence of limitation" or was "moderately limited" in all areas of physical and mental functioning. (Tr. 752, 754). It is well-settled that even moderate limitations in physical and mental functioning are consistent with an ability to perform light, unskilled work. *See White v. Berryhill*, 753 F. App'x 80, 82 (2d Cir. 2019) (upholding a light RFC based on an opinion that the claimant had "moderate limitations" in standing, sitting, and performing other activities); *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (finding that a limitation to unskilled work accounted for the claimant's moderate limitations); *Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012) (affirming the finding that a consultative examiner's and a State agency consultant's assessment of mild-to-moderate limitations were accounted for by RFC limitations to simple tasks in a low-stress environment); *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined her indicated that she had anything more than moderate limitations in her work - related functioning . . . ."). Thus, these opinions supported the ALJ's RFC finding. To the extent that he noted them to also be vague, is harmless error. (*See* Tr. 27).

The ALJ found Dr. Glover's opinion that Plaintiff had marked limitations to be unpersuasive, explaining that it was unsupported by the notation in his opinion that

Plaintiff had only one to two seizure episodes a year and his treatment notes in general, which indicated that Plaintiff was consistently neurologically stable, with no evidence of motor or neurological deficits and that she consistently presented with a stable gait and normal mental status, including that she was alert and fully oriented with good attention and fund of knowledge. (Tr. 28; *citing* Tr. 732, 740, 777, 785).

Plaintiff's argument that remand is required for the ALJ to explain his consideration of Dr. Glover's opinion that low-stress work would increase the frequency of her seizures and cause her condition to deteriorate is unavailing. Rather, Dr. Glover submitted multiple opinions and, under the regulations governing Plaintiff's claim, "the ALJ was not required to articulate how [he] considered each medical individual opinion or multiple medical findings from one medical source." *Morgan v. Comm'r of Soc. Sec.*, No. 20-CV-04554-KAM, 2021 WL 2940842, at *10 (E.D.N.Y. July 13, 2021), citing 20 C.F.R. § 404.1520c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually"). And even if the ALJ could have more explicitly explained his reasons for finding this statement unpersuasive, that is not a reason for remand because the entirety of the ALJ's decision that Plaintiff could perform a range of unskilled work with "no strict production quotas; no supervisory duties; no independent decision making; [and] minimal changes in work routine" is supported by substantial evidence. *See* Tr. 21-28; *see also Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) citing *Brault*, 683 F.3d at 448 ("Indeed, even if the ALJ was not as explicit in his reasoning on this issue as possible, '[a]n ALJ does not have to state on the record every reason justifying a decision,' nor is an ALJ 'required to discuss every piece of evidence submitted.'"); *Sergio A. v. Comm'r of Soc. Sec.*, No. 1:20-

CV-1739-DB, 2022 WL 1004345, at *8 (W.D.N.Y. Apr. 4, 2022) (even where ALJ could have more fully articulated the basis for his conclusion, any such failure is harmless, where it was "possible to glean the ALJ's rationale" from a review of the entire decision) citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).

For instance, the ALJ considered that Plaintiff alleged difficulty handling stress, but noted that she also endorsed the abilities to groom and take care of her personal needs, fix meals consisting of fruits, vegetables, and soups, pay bills, socialize, play board games, and craft. (Tr. 20, citing, *e.g.*, Tr. 335-38, 494-95, 590); *see Salmini,* 371 F. App'x at 112 (noting that a court may "look to other portions of the ALJ's decision and to clearly credible evidence" to find that the decision was supported by substantial evidence). The ALJ also considered, and found persuasive, Dr. Duffy's opinion that Plaintiff could appropriately deal with stress. (Tr. 26, citing Tr. 461). This is sufficient. *See Herb v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 441, 447 (W.D.N.Y. 2019) (noting that when evaluating an ALJ's RFC for stress-based limitations, courts do not demand an exhaustive analysis of the issue).

Plaintiff's further argument that remand is required because the ALJ found the opinion of consultative neurologist Dr. Nikita Dave, M.D., to be "generally persuasive" but did not include all her seizure precautions in his RFC finding is again without merit. As stated previously, simply because an ALJ finds an opinion "generally persuasive," he or she is not required to mirror the entire opinion in his or her RFC finding. The ALJ explained that his RFC finding included "environmental limitations to account for seizure precautions and possible headache triggers." (Tr. 24; *see* Tr. 21 (RFC finding stating that Plaintiff "must avoid concentrated exposure to fumes, odors, dusts, gases, poor[ly] ventilated

areas, and other pulmonary irritants "and have "no exposure to unprotected heights, dangerous moving mechanical parts, loud noises, and vibration."). Plaintiff has not shown that further restrictions are necessary, which is her burden.

Further, Plaintiff is incorrect in her assertion that mirroring Dr. Dave's opinion in the RFC would preclude the performance of any of the jobs identified by the ALJ at step five of the sequential process. The jobs of Photocopy Machine Operator and Ticket Seller do not involve exposure to bright lights or any of the relevant environmental triggers. *See* DOT No. 207.685-014 (photocopy machine operator), 211.467-030 (ticket seller). Thus, even if the ALJ did mirror Dr. Dave's opinion into his RFC finding, the outcome would be unchanged.

Plaintiff's allegation that the ALJ erred by not fully crediting her complaints of memory difficulties is also unpersuasive. Plaintiff's centers her argument on her 2017 brain MRI, which she interprets to mean that her subjective allegations are supported, but an MRI, by itself, does not prove functional limitations. The mere presence of a disease or impairment is not dispositive under the Act; the functional limitations stemming therefrom are what is relevant. *See Ryan v. Colvin*, No. 15-CV-74S, 2017 WL 2240256, at *3 (W.D.N.Y. May 23, 2017); *Howard v. Comm'r of Soc. Sec.*, 203 F. Supp. 3d 282, 296 (W.D.N.Y. 2016).

Further, the ALJ considered other evidence in addition to this MRI that does not support Plaintiff's allegations. For instance, after Dr. Duffy examined Plaintiff and conducted intelligence and memory testing, he found that she could perform simple tasks independently, which is consistent with the ALJ's RFC finding. (*See* Tr. 25-27, citing Tr. 453-62). The ALJ also considered that treatment notes generally found that Plaintiff

- 18 -

exhibited normal or intact memory and recall. (Tr. 19-20, 23; *see, e.g.*, Tr. 610, 622, 657; *see also* Tr. 624, 626, 635, 644, 648, 650 (noting that "naming, comprehension, repetition" were intact or good)).

In sum, the ALJ's decision is supported by substantial evidence and must therefore be affirmed.

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is denied and defendant's motion for judgment on the pleadings (Dkt. No.8) is granted. The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   September 23, 2025
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge